IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RYAN WOODSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:25-cv-01748-G-BT |
| | § | |
| CITY OF DALLAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are separate dispositive motions filed by Defendant Amazon Services LLC (ECF No. 6) (motion to dismiss), Marriott International, Inc. (ECF No. 11) (motion for summary judgment), BDT Capital Partners LLC (ECF No. 14) (motion for judgment on the pleadings), and Jeffrey and Katherine Woodson (ECF No. 19) (motion to dismiss) (collectively, the "Moving Defendants" and the "Motions"). For the reasons stated, the District Judge should **GRANT** the Moving Defendants' Motions and **DISMISS WITH PREJUDICE** Plaintiff's claims against the Moving Defendants. The District Judge should also *sua sponte* **DISMISS WITH PREJUDICE** Plaintiff's claims against Defendants Gayle Morris, Marielle and William Lemasters, Edgardo Garcia, Daryl Barclay, David Lee, and SNL Associates.[1]

---

[1] Woodson asserts a claim under 42 U.S.C. § 1983 against the City of Dallas and the Dallas Police Department. Ex. A, Compl. at 21–22, ¶¶ 96–102. The City of Dallas and Dallas Police Department did not file a dispositive motion, and therefore,

## *Background*

Plaintiff Ryan Woodson initiated a lawsuit in Texas state court against Defendants Jeffrey and Katherine Woodson (the "Woodson Defendants"); Gayle Morris; William and Marielle Lemasters; David Lee; Edgardo Garcia; Daryl Barclay; the City of Dallas; the Dallas Police Department; Amazon Services LLC (Amazon); BDT Capital Partners LLC (Whataburger); Marriott International, Inc. (Marriott); SNL Associates, Inc.; and Does 1–20. Ex. A, Compl. at 2–3, ¶¶ 2–16.[2] In his pleading, Plaintiff asserts a litany of claims against the Defendants, including (1) conspiracy, (2) fraud, (3) negligence, (4) negligent misrepresentation, (5) assault, (6) stalking, (7) false imprisonment, (8) intentional infliction of emotional distress, (9) violations of 42 U.S.C. § 1983, (10) breach of contract, and (11) breach of the implied covenant of good faith and fair dealing. *Id.* at 9–25, ¶¶ 51–113. The City of Dallas removed the case to federal court based on federal question jurisdiction.[3] *See* Not. of Removal at 2, ¶ 8 (ECF No. 1).

---

Woodson's § 1983 claim remains. The Court will enter a Scheduling Order for Plaintiff's remaining claim.

[2] The City of Dallas manually filed a USB containing the documents filed in the state court action, including Plaintiff's live pleading. *See* Not. of Removal at 3, ¶ 12 (ECF No. 1). For reference, a copy of Plaintiff's original pleading is Exhibit A.

[3] Upon review of the Notice of Removal, the City of Dallas timely removed the case to federal court. But the Notice of Removal lacks evidence of consent to removal from *all* the Defendants that appeared in state court, particularly the consent of Defendant Gayle Morris. Although the City of Dallas states that "[a]ll defendants who have been served and appeared and who are subject to suit join in the removal of this action, as reflected by the signature of counsel on the notice," the Court did not locate evidence of the other defendants' consent. Not. of Removal at 3, ¶ 11 (ECF No. 1). That said, this defect is procedural and does not deprive the Court of jurisdiction to decide the Motions. *Weekes v. Allstate Fire and Cas. Ins. Co.*, 690

Stated succinctly, Plaintiff complains that various individuals and entities—along with drug cartels, gangs, cults, and churches—conspired to harass, stalk, frame, and kill him. Plaintiff contends this conspiracy began when he reported "meth cooking" to police in California. Ex. A, Compl. at 3–4, ¶ 19. In retaliation of his alleged police report, Plaintiff claims that various individuals connected to "meth trafficking," including his mother and father, repeatedly attempted "to frame him for a crime and get him arrested." *Id.* at 4, ¶¶ 20–22.

Plaintiff later moved from California to Dallas, Texas, where he contends the stalking, assaults, and murder attempts continued. *Id.* at 5, ¶¶ 26–28. Plaintiff claims that family members, neighbors, Whataburger fast-food workers, Amazon delivery drivers, Marriott hotel employees, and individuals impersonating Dallas police officers joined this conspiracy and were hired to aid in the criminal plots against Plaintiff. *Id.* at 5, ¶¶ 25–28; 6–7, ¶¶ 30–34; 8–9, ¶¶ 40–50. As a result of this purported criminal plot, Plaintiff claims that he has suffered "mental anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame that an ordinary, reasonable person would be unable to cope with[.]" *Id.* at 21, ¶ 95.

The Moving Defendants now seek to dismiss Plaintiff's claims. Plaintiff filed untimely responses to Amazon, the Woodson Defendants, and Whataburger's

---

F. Supp. 3d 599, 608–09 (N.D. Tex. 2023) (Horan, J.) (explaining the difference between subject matter and removal jurisdiction and stating that "the Court may not remand an action to state court *sua sponte* 'for purely procedural defects' or based on a lack of removal jurisdiction.") (quoting *In re Allstate*, 8 F.3d 219, 223 (5th Cir. 1993)).

dispositive motions using the Court's emergency email. *See* Opp. to Amazon's Mot. to Dismiss (ECF No. 12) (deadline was 08/04/2025, filed on 08/24/2025); Opp. to Woodson Defs.' Mot. to Dismiss (ECF No. 20) (deadline was 10/06/2025, filed on 11/11/2025); Opp. to Whataburger's Mot. for J. on the Pleadings (ECF No. 21) (deadline was 09/19/2025, filed on 01/08/2026). Thus, the Court struck Plaintiff's responses from the record. Order (ECF No. 22). The Court also ordered Plaintiff to register as a CM/ECF user, but Plaintiff has yet to comply. *Id.* Although Plaintiff provided an address upon filing, the documents the Court has tried to send to Plaintiff have been returned as "undeliverable," suggesting that Plaintiff moved and failed to advise the Court of his new address. *See* Mail Returned (ECF Nos. 9 & 23). Despite Plaintiff's lack of prosecution, the Motions are ripe for adjudication.

### *Legal Standards*

#### *Rule 56(a)*

A court will grant summary judgment when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all factual controversies in favor of

the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255. Once the moving party has made an initial showing that no evidence supports the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

Mere conclusory allegations are not competent summary judgment evidence, and thus cannot defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (per curiam). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment must identify specific evidence

in the record and articulate the precise way that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### Rules 12(c) and 12(b)(6)

A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).

Under Rule 12(b)(6), the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (cleaned up). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual

matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

### Analysis

*Plaintiff's Claims Against Marriott (Causes of Action Nos. 1–5, 8 & 10–11)*

Plaintiff's claims against Marriott arise from his alleged stay at a Fairfield Inn in Dallas, Texas. Ex. A, Compl. at 12, ¶ 61. During this stay, Plaintiff believes that the Woodson Defendants and Defendant Morris conspired to "intentionally

attempt to kill him, assault him, or frame him for a crime" at Marriott's property. *Id.* Plaintiff claims that Marriott's employees "fraudulently misrepresented and concealed" that he was placed "in a hotel room adjacent to the members of the Morris family who had followed and stalked him there after his 911 call for attempted murder in order . . . to cause Plaintiff substantial harm." *Id.* at 13, ¶ 62. Plaintiff also contends that Marriott negligently screened hotel guests, failed to properly hire and supervise its employees and provide adequate security, and interfered with his stay. *Id.* at 15–17, ¶¶ 69, 77. Plaintiff also characterizes Marriott's actions as "breaches of contract" and breaches of the implied covenant of good faith and fair dealing. *Id.* at 23–24, ¶¶ 103–113.

In response, Marriott states that it "did not own the premises where Plaintiff alleges an incident occurred," "did not operate the subject premises," "did not manage the employees at the subject premises," and "did not hire, train, or employ the employees at the subject premises." Marriott's Mot. for Summary J. at 3, ¶ 5 (ECF No. 11). In support of these assertions, Marriott adduces the affidavit of Loren Nalewanski, the Managing Vice President of U.S. Franchising for Marriott Select Brands, who supports the above contentions. *Id.*, Ex. A, Decl. of Loren Nalewanski, at 1–4. Nalewanski explains that Marriott merely licensed its name to the owner of the subject premises under a franchise agreement. *Id.* at 3, ¶ 8. Plaintiff did not respond to Marriott's Motion for Summary Judgment.

Plaintiff's failure to respond to Marriott's motion does not permit the Court to enter a "default" summary judgment. *See Settlement Cap. Corp., Inc. v. Pagan,*

649 F. Supp. 2d 545, 553 (N.D. Tex. 2009) ("Summary judgment may not be awarded by default merely because the nonmoving party has failed to respond."). But when, as here, a party fails to address another party's assertion of fact, the Court may consider that facts as "undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials show that the movant is entitled to it." *Pogue v. Sw. Credit Sys., L.P.*, 2019 WL 6312267, at *2 (N.D. Tex. Oct. 30, 2019) (Rutherford, J.) (citing Fed. R. Civ. P. 56(e)(2)–(3)), *adopted by* 2019 WL 6311143 (N.D. Tex. Nov. 22, 2019) (Fish, J.). That a litigant is proceeding *pro se* in a particular case does not alter these principles. *See Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that *pro se* plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.").

Here, the record shows that Plaintiff cannot prevail against Marriott. The record contains undisputed evidence that Marriott does not own or operate the premises at which Plaintiff's alleged "stalking" and "attempted assault or murder" occurred. As Plaintiff did not respond to Marriott's motion, he has "not designated specific facts showing that there is a genuine issue for trial." *Taplin v. Wells Fargo Bank, N.A.*, 2018 WL 6933153, at *3 (N.D. Tex. Nov. 28, 2018) (Horan, J.), *adopted by* 2019 WL 112103 (N.D. Tex. Jan. 4, 2019) (Lynn, J.). "A summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Id.* (quoting *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996)).

Accordingly, the District Judge should **GRANT** Marriott's Motion for Summary Judgment and **DISMISS** all claims asserted by Plaintiff against Marriott (Causes of Action Nos. 1–5, 8 & 10–11).

*Plaintiff's Tort Claims*

1. Fraud (Cause of Action No. 2)

In Plaintiff's second cause of action, he alleges that the Woodson Defendants, Gayle Morris, Edgardo Garcia, Daryl Barclay, Marriott, Amazon, and Whataburger "fraudulently misrepresented and concealed" to Plaintiff that they were allegedly conspiring "to frame him for a crime or kill him"; covertly surveilled Plaintiff and hacked into his phone and computer; conspired with the Dallas Police Department and the City of Dallas to ignore Plaintiff's police reports; and many other fantastical allegations involving criminal gangs, impersonation of police officers, and an alleged murder plot. Ex. A, Compl. at 10, ¶¶ 55–63.

The Moving Defendants interpret Plaintiff's fraud claim as one of fraudulent nondisclosure. *See* Amazon's Mot. to Dismiss at 6 (ECF No. 6) ("Although the Complaint purports to assert a fraud claim, Plaintiff's allegations more accurately reflect a cause of action for fraudulent nondisclosure."); Whataburger's Mot. for J. on the Pleadings at 4 (ECF No. 15) ("Woodson's allegations . . . are more suited as being analyzed under a claim for fraud by nondisclosure."); Woodson Defs.' Mot. to Dismiss at 5 (ECF No. 19) ("Although the Complaint purports to assert a fraud claim, Plaintiff's allegations more accurately reflect a cause of action for fraudulent nondisclosure."). The Court also construes Woodson's fraud claim as one for

fraudulent nondisclosure. *See* Ex. A, Compl. at 12–13, ¶¶ 61–62 (stating that Defendants "fraudulently misrepresented and concealed" certain facts to Plaintiff).

"Fraud by nondisclosure is a subcategory of fraud." *Wise v. SR Dall., LLC*, 436 S.W.3d 402, 409 (Tex. App.—Dallas 2014, no pet.) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997)).[4] Fraud by nondisclosure requires a plaintiff to show:

> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury.

*Matter of Clem*, 124 F. 4th 341, 349 (5th Cir. 2024) (citing *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019)). The Moving Defendants assert that Plaintiff failed to establish fraud by nondisclosure because he alleged no duty to disclose, no reliance, and no injury. *See* Amazon's Mot. to Dismiss at 6 (ECF No. 6); Whataburger's Mot. for J. on the Pleadings at 5 (ECF No. 15); Woodson Defs.' Mot. to Dismiss at 5–7 (ECF No. 19). And the Moving Defendants argue that Woodson cannot overcome the heightened pleading standard under Rule 9(b) for fraud claims. Plaintiff did not timely reply to the Motions.

---

[4] As Plaintiff originally filed his Complaint in Texas state court, and given the parties apparently agree that Texas law applies to this action, the Court applies to Texas law to Plaintiff's claims.

A heightened level of pleading applies to fraud claims—plaintiffs alleging fraud must plead with particularity. Fed. R. Civ. P. 9(b). This requires "the complaint to set forth 'the who, what, when, where, and how' of the events at issue." Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Id. (cleaned up).

"The existence of a duty to disclose is an essential element of a fraudulent-nondisclosure claim." City of Clinton v. Pilgrim's Pride Corp., 653 F. Supp. 2d 669, 676 (N.D. Tex. 2009), aff'd by 632 F.3d 148 (5th Cir. 2010). Plaintiff makes no effort to establish that any of the Defendants owed him a duty to disclose under any legal theory. He points to no fiduciary or special relationship that would give rise to a duty to disclose between the Defendants and Plaintiff. See Jang Won Cho v. Kun Sik Kim, 572 S.W.3d 783, 794 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (explaining that a duty to disclose can arise in certain formal relationships where a fiduciary duty arises as a matter of law, or in an informal fiduciary relationship predicated or "a moral, social, domestic or purely personal relationship of trust and confidence"). Plaintiff has thus failed to sufficiently plead the first element of his fraudulent nondisclosure claim.

Further, Plaintiff's complaint is silent about his reliance on, and injury resulting from, the Defendants' purported nondisclosure. Rather, Plaintiff sets

forth a formulaic recitation of the elements for fraud—not fraudulent nondisclosure—without further explanation. Ex. A, Compl. at 13, ¶ 63. Plaintiff's threadbare allegations do not meet the pleading standard in Rule 8(a), let alone Rule 9(b)'s heightened pleading standard. Thus, the Court should dismiss Plaintiff's fraudulent nondisclosure claim (Cause of Action No. 2).

2. Assault (Cause of Action No. 5)

Plaintiff claims that the Woodson Defendants, the Lemasters, Morris, and Lee committed assault by allegedly conspiring to stalk, surveil, frame, and kill him. Ex. A, Compl. at 17–19, ¶¶ 80–83. Plaintiff states that these "intentional actions caused Plaintiff to reasonably apprehend imminent, harmful, or offensive contacts by Defendants and their co-conspirators." *Id.* at 19, ¶ 82. The Woodson Defendants respond that Plaintiff does not allege "a bodily injury, no threats of imminent bodily injury and no physical contact that would be considered offensive or provocative." Woodson Defs.' Mot. to Dismiss at 10 (ECF No. 19).

"The elements of civil assault mirror those of a criminal assault." *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). Under the Texas Penal Code, an assault occurs when a person:

(1)   intentionally, knowingly, or recklessly causes bodily injury to another . . . ;

(2)   intentionally or knowingly threatens another with imminent bodily injury . . . ; or

(3)   intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

*Id.* (citing Tex. Penal Code § 22.01(a)). As to the first type of contact, Plaintiff does not allege that Defendants ever caused him bodily injury. Second, Plaintiff does not allege that Defendants threatened him with imminent bodily injury. *See Jones v. Shipley*, 508 S.W.3d 766, 769 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("The focus in an assault by threat case is on the defendant's words and conduct, and the critical inquiry is whether a *reasonable* person under the circumstances would consider the words and conduct to be an *objective* threat of imminent bodily injury.") (emphasis added). Finally, Plaintiff does not allege that Defendants made any offensive or provocative contact. Plaintiff therefore fails to state a plausible claim for assault.

3. Stalking (Cause of Action No. 6)

Plaintiff also alleges that Defendants "engaged in harassing behavior toward Plaintiff that was reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass him" on "numerous occasions." Ex. A, Compl. at 19, ¶ 85. As a result, Plaintiff claims he "reasonably feared for his safety." *Id.*

To establish a stalking claim under Texas law without evidence that Defendants violated a restraining order prohibiting harassing behavior, Plaintiff must prove:

> (A) the defendant, while engaged in harassing behavior, by acts or words threatened to inflict bodily injury on the claimant or to commit an offense against the claimant . . . ;

    (B)    the defendant had the apparent ability to carry out the threat;

    (C)    the defendant's apparent ability to carry out the threat caused the claimant to reasonably fear for the claimant's safety . . . ;

    (D)    the claimant at least once clearly demanded that the defendant stop the defendant's harassing behavior;

    (E)    after the demand to stop by the claimant, the defendant continued the harassing behavior; and

    (F)    the harassing behavior has been reported to the police as a stalking offense.

Tex. Civ. Prac. & Rem. Code Ann. § 85.003(a). Plaintiff vaguely states that he "was forced to file for a temporary restraining order," but he does not explain whether the restraining order ever went into effect, who the alleged restraining order was against, or whether there was any violation of the same. Ex. A, Compl. at 4, ¶ 22. Nor did Plaintiff allege that he reported his concerns to the police as a stalking offense. Rather, Woodson makes vague references to "police reports" about his "attempted murder" that the Dallas Police Department failed to investigate. Ex. A, Compl. at 6, ¶¶ 33 (alleging that he made "multiple police reports" about "frame attempts" that the Dallas Police Department failed to investigate); 7, ¶ 37 (alleging that he reported an attempted murder, which Defendant Barclay failed to respond to); 8, ¶¶ 40–41 (alleging that individuals impersonating police officers conducted a welfare check on him); 8, ¶ 43 (allegedly reporting to police of an attempted "murder or assault and battery"); 9, ¶¶ 49–50 (alleging that he was stalked on his way to the Dallas Police Department to report his attempted murder). Due to

Plaintiff's pleading deficiencies, the District Judge should conclude that Woodson has failed to plausibly allege a stalking claim.

    4.  <u>False Imprisonment (Cause of Action No. 7)</u>

Plaintiff next claims that due to "Defendants continuously and illegally monitoring Plaintiff's movements on hidden cameras and either following, stalking, assaulting, and attempting to frame Plaintiff for a crime, or directing others to follow, stalk, assault, and try to frame him for a crime, Defendants intentionally restricted Plaintiff's freedom of movement by making him apprehensive and forcing him to not leave his residence[.]" Ex. A, Compl. at 20, ¶ 90.

"False imprisonment in Texas is the direct restraint by one person of the physical liberty of another, without adequate legal justification." *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 554 (S.D. Tex. 2016) (quoting *Reicheneder v. Skaggs Drug Center*, 421 F.2d 307, 310 (5th Cir. 1970)). "Under Texas law, the elements of a false imprisonment claim are: (1) willful detention; (2) without consent; and (3) without authority of law." *Jeanty v. Big Bubba's Bail Bonds*, 72 F. 4th 116, 119 (5th Cir. 2023) (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002)). "[A] detention may be accomplished by violence, threats, or any other means that restrains or wrongfully interferes with a person's freedom." *Wray v. Home Depot USA, Inc.*, 2020 WL 4043053, at *2 (N.D. Tex. July 16, 2020) (Scholer, J.) (quoting *Broadnax v. Kroger Tex., L.P.*, 2005 WL 2031783, at *8 (Tex. App.—Dallas Aug. 24, 2005, no pet.)).

Nowhere in Plaintiff's complaint is there any plausible claim that the Defendants restrained Plaintiff's physical liberty by threat or otherwise. Indeed, Plaintiff was free to leave his residence, but he chose not to go anywhere because of his own apprehension. Therefore, Plaintiff's false imprisonment claim should be dismissed.

5. <u>Intentional Infliction of Emotional Distress (Cause of Action No. 8)</u>

Finally, Woodson seeks damages for intentional infliction of emotional distress (IIED). Ex. A, Compl. at 21, ¶ 94. In sum, Plaintiff states:

> Defendants' intentional conduct was outrageous; Defendants intended to cause Plaintiff emotional distress or Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress; Defendants knew that Plaintiff was present when the conduct occurred; Plaintiff suffered severe emotional distress; and Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

*Id.*

To state a claim for intentional emotional distress, Plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

17

A claim for IIED is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id.* at 447 (discussing *Standard Fruit and Vegetable Co. v. Johnson,* 985 S.W.2d 62, 68 (Tex. 1998)). Therefore, a claim for IIED "cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *Standard Fruit and Vegetable Co.*, 985 S.W.2d at 68.

Plaintiff's IIED claim merely recites the essential elements of an IIED claim and labels the Defendants' purported conduct as "outrageous." Further, Plaintiff's emotional distress is merely incidental to Defendants' alleged stalking and criminal plots. Because the "gravamen" of Woodson's complaint is really his other various tort claims, his IIED claim is not viable. *Hoffman-La Roche Inc.,* 144 S.W.3d at 447.

For the reasons stated above, the District Judge should **DISMISS** Plaintiff's tort claims for failure to state a claim upon which relief may be granted (Causes of Action Nos. 2, 5–9).

### *Plaintiff's Conspiracy Claim (Cause of Action No. 1)*

Plaintiff also alleges that "Defendants conspired with each other and other individuals to follow, harass, stalk, frame, falsely imprison, cause severe emotional distress, assault, and attempt to kill [him] in retaliation for his police reports, 911

calls, and other communications and acts regarding [Defendants'] drug dealing organizations." Ex. A, Compl. at 9–10, ¶ 52.

Under Texas law, civil conspiracy is not an independent tort, but a derivative tort that depends on participation in some underlying tort for which the plaintiff seeks to hold the defendant liable. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *see also Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) ("[C]ivil conspiracy is a theory of vicarious liability and not an independent tort."). So civil conspiracy "survives or fails alongside" the underlying tort alleged. *Agar*, 580 S.W.3d at 141. Accordingly, for Plaintiff's conspiracy claim to prevail, he must plausibly allege the underlying torts. *See, e.g.*, *AFE Oil & Gas, L.L.C. v. Hess*, 2009 WL 294828, at *4 (Tex. App.—Dallas Feb. 9, 2009, no pet.) ("[I]f no defendant is liable for fraud, then no defendant can be liable for conspiracy to commit fraud.").

For the reasons explained above, Plaintiff's complaint does not adequately allege any claim of fraud, assault, stalking, false imprisonment, or intentional infliction of emotional distress against any of the Defendants.[5] And no reasonable person could believe Plaintiff's allegations that the Woodson Defendants, Morris,

---

[5] The Court notes that Plaintiff cannot base his civil conspiracy claim on his negligence claims, which are discussed below. *See Tri v. J.T.T.*, 162 S.W.3d 552, 557 (Tex. 2005) ("We have consistently held that there cannot be a civil conspiracy to be negligent."); *McKinney/Pearl Rest. Partners, L.P. v. Metropolitan Life Ins. Co.*, 241 F. Supp. 3d 737, 772 (N.D. Tex. 2017) ("In Texas, because conspiracy requires specific intent, one cannot agree or conspire to be negligent. Therefore, Plaintiff's claim for conspiracy could be derivative only of its underlying claim for fraud, not negligent misrepresentation.") (internal citation omitted).

the Lemasters, Lee, Marriott, Whataburger, and Amazon conspired "to follow, harass, stalk, frame, falsely imprison, cause severe emotional distress, assault, and attempt to kill Plaintiff[.]" Ex. A, Compl. at 9–10, ¶ 52. Thus, Plaintiff's conspiracy claim fails alongside his tort claims, and the District Judge should **DISMISS** Plaintiff's conspiracy claim (Cause of Action No. 1). *See Adams v. Alcolac, Inc.*, 974 F.3d 540, 545 (5th Cir. 2020) (per curiam) ("Because the plaintiffs have identified no tortious conduct . . . the plaintiffs have failed to establish the elements of civil conspiracy.").

*Plaintiff's Negligence Claims*

1. <u>Negligence (Cause of Action No. 3)</u>

Plaintiff's assertions supporting his claims of negligence mirror his tort allegations and retell the same fantastical story that the Defendants conspired and attempted to frame or kill Plaintiff, secretly surveilled and monitored his activity and movements, and recruited the help of criminal organizations to help stalk and kill him. Ex. A, Compl. at 13–17, ¶¶ 64–79. Plaintiff alleges that the Woodson Defendants, Morris, the Lemasters, Lee, Amazon, Whataburger, and SNL Associates acted negligently by "acting and conspiring" to the do the above actions. *Id.* at 13, ¶ 65.

Under Texas law, "[t]he common law doctrine of negligence consists of three elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 178 (5th Cir. 2018) (quoting *Greater Hous. Transp. Co. v.*

*Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). Whether a duty exists "is a question of law for the court to decide from the facts surrounding the occurrence in question." *Id.* (quoting *Greater Hous. Transp. Co.*, 801 S.W.2d at 525). Duty "is the threshold inquiry, and a plaintiff must prove the existence and violation of a duty owed by the defendant to establish liability in tort." *Est. of Newton v. Grandstaff*, 2011 WL 2678933, at *3 (N.D. Tex. July 8, 2011) (Lindsay, J.) (citing *Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 631 (Tex. 1976)).

In conclusory fashion, Plaintiff states that the Defendants "owed Plaintiff a legal duty to exercise reasonable care in connection with their dealings with Plaintiff. The Negligent Defendants breached their legal duty to Plaintiff by negligently acting and conspiring . . . ." Ex. A, Compl. at 13, ¶ 65. Plaintiff does not elaborate on this purported "legal duty," and he presents no facts establishing that any of the Moving Defendants owed him a "legally enforceable obligation to conform to a particular standard of conduct." *Fugett v. DCP Midstream, L.P.*, 2015 WL 510965, at *3 (N.D. Tex. Feb. 6, 2015) (Robinson, J.) (quoting *Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 233 (Tex. App.—Dallas 1993, writ denied)). Plaintiff's general recitation of the elements of a negligence claim fails to plausibly allege a claim for relief.

2. Negligent Misrepresentation (Cause of Action No. 4)

Plaintiff next claims that the Woodson Defendants, Morris, the Lemasters, and Lee "negligently misrepresented or negligently concealed to [him] all of the preceding material information" in his negligence cause of action discussed above.

Ex. A, Compl. at 16, ¶ 75. In response, the Woodson Defendants argue that Plaintiff meets none of the elements of a negligent misrepresentation claim. Woodson Defs.' Mot. to Dismiss at 9–10 (ECF No. 19).

To state a claim for negligent misrepresentation under Texas law, a plaintiff must allege: (1) the defendant made a representation in the course of his business, or in a transaction where he has a pecuniary interest; (2) the defendant provided false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence when obtaining or communicating this information; and (4) the plaintiff sustained a pecuniary loss by justifiably relying on the defendant's representation. *See Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005) (cleaned up) (quoting *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996)).

Plaintiff wholly fails to allege facts to support the elements of negligent misrepresentation. He did not allege that the Woodson Defendants—or any of the Defendants—made a representation in the course of a business or transaction in which he has a pecuniary interest, how the Woodson Defendants failed to exercise reasonable care in communicating the alleged misrepresentation to him, how Plaintiff justifiably relied on the misrepresentation to his detriment, or what pecuniary loss he suffered as a result of his reliance on the misrepresentation. Plaintiff's complaint lacks well-pleaded facts to plausibly allege a negligent misrepresentation claim.

3.  Negligent Hiring, Training, and Supervision

Although Plaintiff does not bring a separate cause of action for negligent hiring, training, and supervision, he alleges that Defendants Amazon and Whataburger negligently hired, trained, and supervised its employees. Ex. A, Compl. at 15, ¶¶ 67–68. Amazon and Whataburger highlight that Plaintiff has not alleged a legal duty or flaws with Amazon and Whataburger's hiring, training, and supervision processes. Whataburger's Mot. for J. on the Pleadings, at 8–9 (ECF No. 15); Amazon's Mot. to Dismiss at 10–12 (ECF No. 6).

"To recover under a theory of negligent hiring, a plaintiff must prove that (1) the employer owed a legal duty to protect third parties from the employee's actions and (2) the third party's sustained damages were proximately caused by the employer's breach of that duty." *Gordon v. Bank of Am. Corp. & Green Tree Servicing, LLC*, 2015 WL 5872659, at *7 (N.D. Tex. Oct. 5, 2015) (Lindsay, J.) (quoting *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 901 (Tex. App.—Fort Worth 2007), *rev'd on other grounds by* 306 S.W.3d 230 (Tex. 2010)). To properly plead a claim of negligent supervision, a plaintiff must allege that the defendant owed him a legal duty to supervise its employees, that it breached that duty, and that the breach proximately caused the plaintiff's injuries. *People's Choice Home Loan, Inc. v. Mora*, 2007 WL 708872, at *7 (N.D. Tex. Mar. 7, 2007) (Fish, J.) (citing *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). "In addition to proving negligence on the part of the employer in hiring, supervising, or training the employee, the plaintiff also must prove that the

employee committed an actionable tort." *Id.* (citing *Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 384 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).

Plaintiff makes no allegations that Defendants Amazon and Whataburger failed to investigate, screen, or supervise its employees. *See Walker v. Everhart Transp., Inc.*, 2024 WL 1517221, at *1 (N.D. Tex. Apr. 5, 2024) (Toliver, J.) ("A negligent hiring claim requires a plaintiff to allege enough facts to establish that the employer was negligent because it 'fail[ed] to investigate, screen, or supervise its hirees[.]'"). And Plaintiff asserted no factual information about Defendants Amazon and Whataburger's allegedly deficient training. *See Johnson v. Cox*, 2024 WL 331631, at *7 (N.D. Tex. 2024) (Brown, J.) ("To support a claim for negligent training and supervision, a plaintiff must prove that a reasonably prudent employer would have provided training and supervision beyond that which was given and the failure to do so caused his injuries.") (quoting *Lermon v. Minyard Food Stores, Inc.*, 2014 WL 6466840, at *8 (Tex. App.—Dallas 2014, no pet.)). Plaintiff's mere legal conclusion that Defendants Amazon and Whataburger failed to "properly hire, train, and supervise, its employees," devoid of factual support, dooms his claim.

For the above reasons, the District Judge should **DISMISS** Plaintiff's various negligence claims for failure to state a claim upon which relief may be granted.

### Woodson's Claims Against the Nonmoving Defendants

Defendant Gayle Morris, proceeding *pro se*, has been served with legal process and filed an answer in state court, but she has not filed a dispositive motion

in this case. And Defendants Marielle and Williams Lemasters, Edgardo Garcia, Daryl Barclay, and SNL Associates have not appeared in this lawsuit (collectively with Morris, the "Nonmoving Defendants"). Nonetheless, the claims against the Nonmoving Defendants should be dismissed.

"The Fifth Circuit has held that where 'a defending party establishes that a plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant,'" and district courts have extended this holding to unserved defendants. *Armendariz v. Chowaiki*, 2016 WL 8856919, *19 (W.D. Tex. Mar. 31, 2016) (citing *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001)); *see also Roa v. City of Denison*, 2017 WL 9287012, at *18 (E.D. Tex. Aug. 29, 2017) (dismissing claims against unserved defendants upon finding that plaintiff had failed to state a claim against the appearing defendants, "as defaulting and/or unserved defendants may generally derive the benefit of a defendant party's demonstration that the plaintiff has no cause of action"), *adopted by* 2017 WL 4675062 (E.D. Tex. Oct. 18, 2017)). Here, Plaintiff asserts the same claims against the Nonmoving Defendants as the Moving Defendants, and the Rule 12(b)(6) analysis is not unique to any Defendant. Therefore, the District Judge should **DISMISS** Plaintiff's claims against Defendants Gayle Morris, Marielle and Williams Lemasters, Edgardo Garcia, Daryl Barclay, and SNL Associates. *See Liccardi v. Schorr*, 2023 WL 9102232, at *5 (N.D. Tex. Dec. 11, 2023) (Rutherford, J.), *adopted by* 2024 WL 57319 (N.D. Tex. Jan. 3, 2024) (Kinkeade, J.).

### *Opportunity to Amend*

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint before dismissal, but leave is not required when he has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Further, "an opportunity to replead is unnecessary where the facts alleged are fantastic or delusional scenarios or where the legal theory upon which a complaint relies is indisputable meritless.'" *Starrett v. U.S. Dep't of Def.*, 2018 WL 6069969, at *3 (N.D. Tex. Oct. 30, 2018) (Ramirez, J.) (internal quotations omitted) (quoting *Gregory v. McKennon*, 430 F. App'x 306, at *1 (5th Cir. 2011)), *aff'd by* 763 F. App'x 383 (5th Cir. 2019).

Even based on the most deferential review of Plaintiff's fantastic allegations, it is unlikely that, given the opportunity, he could allege viable legal claims. Further, Plaintiff did not timely respond to the Moving Defendants' Motions and did not request an opportunity to amend his pleading. Plaintiff also failed to comply with the Court's Order to register as a CM/ECF user, and documents the Court has tried to send Plaintiff at his provided address have been returned as "undeliverable." Not only do these actions suggest "a failure to prosecute but also indicates that Plaintiff is unable to set forth allegations to support his claims[.]" *Del Rio Trejo v. Bank of Am., N.A.*, 2020 WL 980951, at *1 (N.D. Tex. Feb. 28, 2020) (Lindsay, J.).

Thus, the District Judge should conclude that granting leave to amend under these circumstances would be futile and cause needless delay. *See Starrett*, 2018

WL 6069969, at *3 (denying leave to amend because the plaintiff's "fantastical and delusional scenario" could not "be remedied by an opportunity to amend or further factual development"); *Korn v. Tex.*, 2022 WL 494377, at *3 (N.D. Tex. Jan. 31, 2022) (Toliver, J.) (denying leave to amend because the plaintiff's claims were "fatally infirm"), *adopted by* 2022 WL 487929 (N.D. Tex. Feb. 17, 2022) (Scholer, J.). The District Judge should therefore **DISMISS WITH PREJUDICE** Plaintiff's claims.

### Recommendation

For the reasons stated above, the District Court should **GRANT** the Motions (ECF Nos. 6, 11, 14 & 19) and **DISMISS WITH PREJUDICE** Plaintiff's claims against Defendants Amazon Services LLC, Marriott International, Inc., BDT Capital Partners LLC, and Jeffrey and Katherine Woodson. The District Judge should also *sua sponte* **DISMISS WITH PREJUDICE** Plaintiff's claims against Defendants Gayle Morris, Marielle and Williams Lemasters, Edgardo Garcia, Daryl Barclay, and SNL Associates.

**SO RECOMMENDED.**

February 12, 2026.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

# Exhibit A

Case 3:25-cv-01748-G-BT    Document 24    Filed 02/12/26    Page 30 of 54    PageID 213

FILED
10/29/2024 11:50 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Shunta Jackson DEPUTY

PRO SE

1  Ryan Woodson
2  10749 Sandpiper Ln.
   Dallas, Texas 75230
3  Tel.: 214-502-1121
   Email: rwcalif@gmail.com
4
5  Plaintiff *in pro per*

6

7

8  ## IN THE DISTRICT COURT OF THE STATE OF TEXAS

9  ## FOR THE COUNTY OF DALLAS

10
11  RYAN WOODSON, an individual,

12          Plaintiff,

13  v.

14  JEFFREY WOODSON, an individual;
15  KATHERINE WOODSON, an individual;
    GAYLE MORRIS, an individual; CITY
16  OF DALLAS; DALLAS POLICE
    DEPARTMENT; MARIELLE
17  LEMASTERS, an individual; WILLIAM
    LEMASTERS, an individual; DAVID
18  LEE, an individual; EDGARDO GARCIA;
19  DARYL BARCLAY; AMAZON
    SERVICES LLC; BDT CAPITAL
20  PARTNERS LLC; MARRIOTT
    INTERNATIONAL, INC.; SNL
21  ASSOCIATES, INC.; and DOES 1
22  through 20, inclusive,

23          Defendants.

24

25

26

27

28

Case No. DC-24-19332        193rd

**PLAINTIFF RYAN WOODSON'S
COMPLAINT AGAINST DEFENDANTS
JEFF WOODSON, KATHERINE
WOODSON, GAYLE MORRIS, CITY OF
DALLAS, DALLAS POLICE DEPARTMENT,
MARIELLE LEMASTERS, WILLIAM
LEMASTERS, DAVID LEE, EDGARDO
GARCIA, DARYL BARCLAY, AMAZON
SERVICES LLC, BDT CAPITAL PARTNERS
LLC, MARRIOTT INTERNATIONAL, INC.,
AND SNL ASSOCIATES, INC.**

1.  **CONSPIRACY**
2.  **FRAUD**
3.  **NEGLIGENCE**
4.  **NEGLIGENT MISREPRESENTATION**
5.  **ASSAULT**
6.  **STALKING**
7.  **FALSE IMPRISONMENT**
8.  **INTENTIONAL INFLICTION OF
    MOTIONAL DISTRESS**
9.  **VIOLATION OF 42 U.S.C § 1983**
10. **BREACH OF CONTRACT**
11. **BREACH OF THE IMPLIED
    COVENANT OF GOOD FAITH AND FAIR
    DEALING**

**DEMAND FOR JURY TRIAL**

-1-

1

## PARTIES

2

3

1.      Plaintiff RYAN WOODSON, an individual ("PLAINTIFF"), is and at all times relevant to this action was a resident of Dallas, Texas.

4

5

2.      Defendant JEFFREY WOODSON, an individual, is and at all times relevant to this action was a resident of Dallas, Texas.

6

7

3.      Defendant KATHERINE WOODSON, an individual, is and at all times relevant to this action was a resident of Dallas, Texas.

8

9

4.      Defendant GAYLE MORRIS, an individual ("MORRIS"), is and at all times relevant to this action was a resident of Dallas, Texas..

10

11

5.      Defendant MARIELLE LEMASTERS, an individual ("LEMASTERS"), is and at all times relevant to this action was a resident of Dallas, Texas.

12

13

6.      Defendant WILLIAM LEMASTERS, an individual, is and at all times relevant to this action was a resident of Dallas, Texas.

14

15

7.      Defendant DAVID LEE, an individual ("LEE"), is and at all times relevant to this action was a resident of Dallas, Texas.

16

17

8.      Defendant CITY OF DALLAS is and at all times relevant to this action was a municipality in Dallas County, Texas.

18

19

9.      Defendant DALLAS POLICE DEPARTMENT ("DPD") is and 1.at all times relevant to this action was an entity in Dallas County, Texas.

20

21

10.     Defendant EDGARDO GARCIA, an individual ("GARCIA"), is and at all times relevant to this action was a resident of Dallas, Texas.

22

23

11.     Defendant DARYL BARCLAY, an individual ("BARCLAY"), is and at all times relevant to this action was a resident of Dallas, Texas.

24

25

12.     Defendant AMAZON SERVICES LLC ("AMAZON) is and at all times relevant to this action was a corporation doing business in Dallas, Texas.

26

27

13.     Defendant BDT CAPITAL PARTNERS LLC ("WHATABURGER") is and at all times relevant to this action was a corporation doing business as Whataburger in Dallas, Texas.

28

-2-

14.     Defendant MARRIOTT INTERNATIONAL, INC. ("MARRIOTT") is and at all times relevant to this action was a corporation doing business as Fairfield Inn & Suites ("Fairfield") in Dallas, Texas.

15.     Defendant SNL ASSOCIATES, INC. ("SNL") is and at all times relevant to this action was a California corporation doing business as Pagewood Townhomes ("Pagewood") in Dallas, Texas.

16.     PLAINTIFF is presently unaware of the true identities and capacities of the Defendants sued herein by the fictitious names DOES 1 through 20, inclusive. PLAINTIFF is informed and believes and based thereon alleges that each such fictitiously named DOE Defendant is legally liable to him for their acts, omissions, and for their involvement in the events and transactions on which this action is based. PLAINTIFF will amend this Complaint when he ascertains the true names and capacities of the fictitiously named DOE Defendants.

## JURISDICTION

17.     Dallas County District Court is the proper jurisdiction because the events that form the basis of PLAINTIFF's Complaint occurred in Dallas County, Texas and PLAINTIFF and DEFENDANTS are residents of, located in, or doing business in Dallas County, Texas.

## FACTUAL ALLEGATIONS

### Meth Cooking Police Calls Against Organized Crime Relatives of Defendants

18.     In April 2019, PLAINTIFF leased a house from Isaac Laufer ("Laufer") in Redondo Beach, California. Laufer fraudulently concealed to PLAINTIFF that he was close relatives of the founders of Whitey Bulger's Winter Hill Gang, the McLeans. In 2021, the Department of Justice sued Laufer for embezzling over $100 billion from Medicare through several nursing homes he operated in New York and Laufer's brother was indicted for a $20 million fraudulent car wreck insurance scheme. Laufer also fraudulently concealed that he was related to his tenants next door at 1007 S. Prospect Avenue who began cooking meth daily.

19.     JEFF WOODSON is related to the tenants, the Wells, who are close relatives of Beau Hershberger ("Hershberger") who was indicted in a $10 million drug bust several years before. JEFF

-3-

1    WOODSON fraudulently concealed to PLAINTIFF that he was related to these individuals. In

2    September 2020, PLAINTIFF called 911 to report the neighbors' meth cooking to the

3    RBPD and called the RBPD on the neighbors several more times through 2020. JEFF WOODSON

4    conspired with Laufer to lease the property to PLAINTIFF in order to get PLAINTIFF arrested.

5    20.    In retaliation against PLAINTIFF for calling the police on their meth cooking and dealing,

6    Laufer conspired with Simeon Hixson ("Hixson"), a close relative of Hershberger, to lease a property

7    to PLAINTIFF in May 2021 to frame him for a crime and get him arrested. Furthermore, Hixson is a

8    relative of KATHERINE WOODSON who conspired with Hixson to lease the property to PLAINTIFF

9    in order to get PLAINTIFF arrested on a criminal frame job.

10    21.    After moving into the Hixson property, PLAINTIFF noticed meth cooking immediately by his

11    co-tenant. Subsequently, Hixson's tenants and others attempted to frame PLAINTIFF for a crime by

12    staging an attempted break-in and unlawfully and fraudulently blaming PLAINTIFF, but the unlawful

13    attempt was thwarted by a person witnessing the incident.

14    22.    Subsequently, JEFF WOODSON, KATHERINE WOODSON, Laufer, and Hixson conspired

15    with others to lease a property to PLAINTIFF in Manhattan Beach, California to retaliate against

16    PLAINTIFF by again trying to frame him for a crime and get him arrested. PLAINTIFF was forced to

17    file for a temporary restraining order and was later illegally detained by a MBPD officer who was a

18    relative of Hershberger, Laufer, and Hixson.

19    23.    PLAINTIFF believes that JEFF WOODSON, KATHERINE WOODSON, MORRIS,

20    LEMASTERS, Laufer, Hixson, and others are involved in meth trafficking through the federally

21    indicted The Order cult aka The Kingston Clan, the Mormon church, and/or the Church of Scientology

22    and are associated with the drug cartels the Knights Templar, Gomez Martinez cartel, Martin-Story

23    gang, Sinaloa cartel, and other drug cartels. PLAINTIFF has sued Laufer, Hixson, RBPD, HBPD,

24    MBPD, and other defendants in related cases in California.

25    24.    PLAINTIFF was immediately stalked by multiple individuals on the street of KATHERINE

26    WOODSON and MORRIS including but not limited to multiple members of MORRIS'S family. This

27    even forced PLAINTIFF to cease walking his dog on the street and hire a dog walker.

28

-4-

1    **JANUARY 2023 MURDER ATTEMPTS**

2    25.    Prior to returning to Dallas, PLAINTIFF discovered that Defendant DAVID LEE ("LEE"),

3    who was the private investigator of a California law firm from which PLAINTIFF obtained a monetary

4    settlement, had married KATHERINE WOODSON's next door neighbor on the other side from

5    MORRIS named MARIELLE LEMASTERS. WILLIAM LEMASTERS owns the townhouse. All

6    three adjacent townhomes are located in Pagewood Townhomes.

7    26.    On December 31, 2022, PLAINTIFF returned to Dallas from Manhattan Beach and arrived late

8    in the evening. The first and second times he left KATHERINE WOODSON's townhouse, he was

9    followed, stalked, and assaulted by multiple family members of MORRIS. The second time, a family

10   member of MORRIS made a false police report on PLAINTIFF in an attempt to frame him for a crime.

11   27.    On January 5, 2023, JEFF WOODSON invited PLAINTIFF to lunch at private Royal Oaks

12   Country Club, which he later changed to public Backyard Barbeque on Greenville Avenue. In the

13   parking lot after lunch, PLAINTIFF was intentionally blocked in his parking space by three cars who

14   PLAINTIFF believes intended on shooting or assaulting him. PLAINTIFF later identified some of the

15   individuals to be relatives of MORRIS, neighbor Elizabeth Murray, and other neighbors including one

16   related to the KATHERINE WOODSON's Martin family, Jason Martin Caswell ("Martin Caswell").

17   Later in the afternoon of January 5, 2023, Martin Caswell made another attempt to kill or assault

18   PLAINTIFF on or near the Northhaven Trail.

19   28.    On January 6, 2023, PLAINTIFF took his dog to Churchill Park on Forest Lane south of LBJ

20   freeway. PLAINTIFF was followed to a nearby office parking lot where three cars again attempted to

21   block him in a parking space by individuals who PLAINTIFF believes are related to MORRIS,

22   Murray, and included Martin Caswell. PLAINTIFF believes that they intended on shooting or

23   assaulting him.

24   29.    On January 7, 2023, PLAINTIFF took his dog to the vet on Preston and LBJ to treat injuries he

25   sustained from the driving PLAINTIFF had to do to escape these individuals. When returning,

26   KATHERINE WOODSON suggested they go to WHATABURGER drive through on Forest and

27   Central. When arriving, the only car in the drive through was an African American individual who

28

-5-

1  PLAINTIFF later learned was Marcus Morris, another relative of MORRIS and a police officer for
2  DISD and possibly also DPD.

3  30.      When WHATABURGER unusually instructed both cars to move forward to wait for their food,
4  a large white pickup that PLAINTIFF believes was driven by another relative of MORRIS pinned
5  them in from behind while a car driven by Martin Caswell parked off the rear, right bumper of
6  KATHERINE WOODSON's car with PLAINTIFF in the front passenger seat. Again, PLAINTIFF
7  believes that they intended on shooting or assaulting him. PLAINTIFF believes that the
8  WHATABURGER drive through employee was a Morris and this location employed other Morris's.
9  31.      Subsequently over the next several days, PLAINTIFF continued to be stalked, followed, and
10  assaulted by neighbors of KATHERINE WOODSON and MORRIS and others. PLAINTIFF observed
11  many individuals on or around the street with earpieces or monitoring their cell phones for direction.
12  PLAINTIFF later discovered that KATHERINE WOODSON had numerous hidden cameras and audio
13  devices placed in her townhouse in order for she, MORRIS, LEMASTERS, LEE, Murray, and others
14  to monitor and direct others to follow, stalk, and assault.

15  32.      PLAINTIFF also discovered that MORRIS had illegally arranged for every one of the
16  approximate ten deliverymen on the street to be Morris's including but not limited to United States
17  postal, AMAZON, Fed Ex, and UPS employees. MORRIS illegally conspired with employees of these
18  companies to make these arrangements. On numerous occasions from January 2023 through the
19  present, MORRIS, LEMASTERS, LEE, Murray, and others directed these people to drive up near
20  KATHERINE WOODSON's townhouse when they observed on the hidden cameras that PLAINTIFF
21  was leaving to illegally attempt to frame him for a crime.

22  33.      They or other neighbors intended on claiming PLAINTIFF did something illegal with the other
23  deliverymen or neighbors to be lying witnesses to a fabricated crime. MORRIS, LEMASTERS, LEE,
24  Murray, and others also used other companies for frame attempts such as DART and Waste
25  Management, which are controlled or managed by Morris's. PLAINTIFF made multiple police reports
26  on these individuals and companies, which DPD also failed to investigate at all.

27  34.      AMAZON, these deliverymen and other workers, and these companies fraudulently concealed
28  to PLAINTIFF that they were conspiring with Defendants to frame him for a crime, or at a minimum

-6-

1    acted negligently. AMAZON also failed to exercise reasonable care in, *inter alia*, hiring these workers,
2    training them, and supervising them.

3    35.    Therefore, PLAINTIFF left the house of KATHERINE WOODSON. PLAINTIFF was then
4    followed and stalked by their neighbors and members of their criminal group to multiple other cities in
5    Texas where PLAINTIFF believes several other attempted murders and assaults occurred at motels and
6    other locations.

7    36.    Then, PLAINTIFF returned to KATHERINE WOODSON's townhouse because it would be
8    relatively safer than a motel and PLAINTIFF did not have the financial resources or employment to
9    purchase or lease a stand alone house. PLAINTIFF continued to be followed and stalked by neighbors
10   of KATHERINE WOODSON, MORRIS, and LEMASTERS and the deliverymen.

11   37.    On or about March 1, 2023, PLAINTIFF posted on Facebook that he was almost shot on
12   January 5, 6, and 7, 2023 and nearly killed at several different motels. On or about March 8, 2023,
13   PLAINTIFF reported the attempted murders on January 5, 6, and 7, 2023 to DPD Detective
14   BARCLAY. BARCLAY failed to respond to PLAINTIFF's attempted murder reports by email, phone,
15   or in person.

16   38.    In April 2023, PLAINTIFF left KATHERINE WOODSON's townhouse and traveled to Las
17   Vegas, Nevada in order to obtain affordable housing while he looked online for a job in California. In
18   or about October 2023, PLAINTIFF returned to California. In Las Vegas and California, PLAINTIFF
19   was also followed and stalked by members of Defendants' group where they continued to attempt to
20   frame him for a crime in retaliation.

21   39.    In January 2024, PLAINTIFF was forced to return to KATHERINE WOODSON'S townhouse
22   because his financial resources were depleted and he had no other options to reside. PLAINTIFF
23   continued to be followed and stalked by members of Defendants' group including numerous Morris's
24   including family members of Marcus Morris and other DPD officers. In or about February 2024,
25   PLAINTIFF discovered numerous hidden cameras and audio devices in KATHERINE WOODSON's
26   house.

27

28

-7-

1   **MAY 1, 2024 ILLEGAL IMPERSONATION OF DPD OFFICERS**

2   40.   On May 1, 2024, alleged members of the DPD knocked on the front door of KATHERINE

3   WOODSON's townhouse while PLAINTIFF was there alone. There were three alleged DPD officers

4   and three DPD sedan cars. One African American alleged DPD officer stated they were there to do a

5   welfare check because someone had allegedly reported that PLAINTIFF was stating he was about to

6   be killed by the Kingston Clan.

7   41.   PLAINTIFF later discovered that the African American alleged DPD officer was the relative of

8   Marcus Morris and was not a DPD officer. He was criminally impersonating a DPD officer in order to

9   falsely arrest, assault, or murder PLAINTIFF. PLAINTIFF also believes the other two white, alleged

10  DPD officers were not police officers and were also illegally impersonating DPD officers. They had

11  evidently been given the DPD police cars, uniforms, badges, and guns by other DPD officers.

12  **MAY 13, 2024 MURDER ATTEMPTS**

13  42.   Several days later, PLAINTIFF discovered on his hacked and monitored cell phone that JEFF

14  WOODSON and he are, or JEFF WOODSON believes he is, descendants of the Norman Hauteville

15  that conquered Southern Italy and Sicily in the 11th century by driving out the Muslims.

16  43.   On May 13, 2024, KATHERINE WOODSON, MORRIS, MARIELLE LEMASTERS, and

17  LEE retaliate against PLAINTIFF by trying to murder or assault and battery PLAINTIFF in

18  KATHERINE WOODSON's house. Accordingly, PLAINTIFF called 911 to have the DPD intervene.

19  44.   Subsequently, two DPD sedan cars and three DPD alleged officers came to KATHERINE

20  WOODSON's townhouse. However, there were again multiple individuals illegally impersonating

21  DPD officers. All three of the alleged DPD officers had last names connected to the Hauteville family

22  including two with the same last names as JEFF WOODSON's former employees, Bailey and

23  Vasquez.

24  45.   In addition, the DPD Internal Affairs Department confirmed to PLAINTIFF that there are no

25  DPD officers with the last name of the other alleged officer, Tanksworth. Therefore, PLAINTIFF

26  believes that Defendants' group may have diverted his cell phone 911 call, intercepted it, and sent

27  people impersonating DPD officers or the DPD conspired with them directly.

28

-8-

1   46.    The alleged officers were illegally given DPD cars, guns, uniforms, and badges. The alleged

2   DPD officers failed to question MORRIS at all and only went to the door of the LEMASTERS

3   townhouse briefly. They also failed to inspect any part of KATHERINE WOODSON's townhouse.

4   47.    Furthermore, PLAINTIFF left the townhouse about 3:00 a.m. to go to a MARRIOTT hotel, the

5   Fairfield Inn, and was illegally followed and stalked there by multiple family members of MORRIS to

6   finish the job. There were also multiple members of MORRIS's family at this Fairfield Inn conspiring

7   to assault or kill PLAINTIFF. This fully confirmed that MORRIS, KATHERINE WOODSON,

8   LEMASTERS, and LEE intended to murder or cause serious harm to PLAINTIFF at KATHERINE

9   WOODSON's townhouse.

10  48.    Additionally, it was certainly no coincidence that the Morris's were there and they were not

11  there to assist PLAINTIFF in any manner. It also confirms that the DPD intentionally failed to

12  investigate PLAINTIFF's attempted murder 911 call and sent him to his death at the Fairfield Inn.

13  Their malicious intentions were further confirmed when PLAINTIFF was followed and stalked the

14  next several weeks by family members of MORRIS, Vasquez, and Bailey.

15  49.    On or about Friday, May 24, 2024, PLAINTIFF went to the DPD's downtown location to

16  discuss his attempted murder reports with a DPD detective and was followed and stalked there by a

17  Vasquez family member. Prior to entering the building, Vasquez entered.

18  50.    When PLAINTIFF requested through a DPD officer at the front desk to speak with a detective,

19  he intentionally lied and stated that no detectives are available the rest of the day and would not be

20  available to discuss PLAINTIFF's attempted murder report until four days later after Memorial Day.

21                          **FIRST CAUSE OF ACTION – CONSPIRARCY**

22      (Against Defendants JEFF WOODSON, KATHERINE WOODSON, MORRIS, LEMASTERS, LEE,

23                          MARRIOTT, WHATABURGER, and AMAZON)

24  51.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every

25  previously alleged paragraph in the Complaint as though fully set forth at length again.

26  52.    Defendants conspired with each other and other individuals to follow, harass, stalk, frame,

27  falsely imprison, cause severe emotional distress, assault, and attempt to kill PLAINTIFF in retaliation

28  for his police reports, 911 calls, and other communications and acts regarding their drug dealing

-9-

1 organizations. They met, communicated, and planned the conspiracy with the object or course of

2 action to be follow, harass, stalk, frame, falsely imprison, cause severe emotional distress, assault, and

3 attempt to kill PLAINTIFF.

4 53.    Accordingly, Defendants are jointly and severally liable for all of the unlawful acts of their

5 co-conspirators, including unnamed defendants, in furtherance of the conspiracy. This includes, but is

6 not limited to, all of Defendants' co-conspirators who were directed by Defendants to follow, harass,

7 stalk, frame, falsely imprison, cause severe emotional distress, assault, and attempt to kill PLAINTIFF.

8 54.    Defendants committed numerous unlawful, overt acts in furtherance of their conspiracy that

9 proximately caused PLAINTIFF damages including, but not limited to, general and compensatory

10 damages, punitive damages, damages to PLAINTIFF's body and physical health, attorneys' fees, fees

11 and costs, and severe emotional distress and mental anguish.

12 **SECOND CAUSE OF ACTION – FRAUD**

13 (Against Defendants JEFF WOODSON, KATHERINE WOODSON, MORRIS, GARCIA,

14 BARCLAY, MARRIOTT, AMAZON, and WHATABURGER)

15

16 55.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every

17 previously alleged paragraph in this Complaint as though fully set forth at length again.

18 56.    From January 1, 2023 through the present through in-person, telephone, text, or email

19 communications in Dallas, Texas and/or with PLAINTIFF while he was in Las Vegas, Nevada or

20 Southern California, JEFF WOODSON, KATHERINE WOODSON, and MORRIS fraudulently

21 misrepresented and concealed to PLAINTIFF the following material information:

22        -    that they were conspiring with MORRIS, LEMASTERS, and LEE to frame him for a

23 crime or kill him to cover up their association with Laufer, Hixson, and other drug dealers.

24        -    they were related to his California landlords Laufer and Hixson and that they conspired

25 with them to frame him for a crime in retaliation for his police reports against them.

26        -    they had arranged for the private investigator of PLAINTIFF'S former law firm, LEE, to

27 frame him or kill him

28

-10-

1    -    they had placed numerous hidden cameras and audio devices in KATHERINE
2   WOODSON's townhouse, in PLAINTIFF'S car, and hacked his cell phone and computer in order to
3   frame him for a crime or kill him

4   -    they had conspired with MORRIS, LEMASTERS, and LEE to monitor the hidden cameras,
5   track PLAINTIFF's movements, and direct neighbors and others to follow and stalk him in order to
6   frame him for a crime

7    -    they conspired with members of the MORRIS and Murray families, Jason Martin
8   Caswell ,and WHATABURGER to have PLAINTIFF assaulted or killed at Backyard Barbeque on
9   January 5, 2023, near Churchill Park on January 6, 2023, and at WHATABURGER on January 7, 2023
10  they were involved in the Martin-Story Gang, a version of the Jesse Woodson James organization, and
11  other drug cartels

12   -    they conspired with the DPD and City of Dallas to have the DPD refuse to investigate
13  PLAINTIFF's multiple police reports of attempted murder and crime frame attempts

14   -    they lied about the death of multiple relatives and family friends in order to postpone
15  PLAINTIFF from filing police reports and a lawsuit against them

16   -    they had arranged for members of their affiliated criminal gangs to follow and stalk
17  PLAINTIFF when he left Dallas in January 2023 and attempt to frame or kill him in retaliation

18   -    they had arranged for members of their affiliated criminal gangs to follow and stalk
19  PLAINTIFF when he left Dallas in April 2023 to Las Vegas, Nevada and California and attempt to
20  frame or kill him in retaliation

21   -    they had arranged for members of their affiliated criminal gangs to follow and stalk
22  PLAINTIFF when he left Dallas in March 2024 to Las California and attempt to frame or kill him in
23  retaliation

24   -    they conspired with MORRIS, LEMASTERS, LEE, and the DPD to have fake DPD
25  officers go to KATHERINE WOODSON's townhouse on May 1, 2024 for an alleged welfare check on
26  PLAINTIFF

27   -    they attempted with MORRIS, LEMASTERS, and LEE to murder PLAINTIFF at
28  KATHERINE WOODSON's townhouse on May 13, 2024

-11-

1      -    they conspired with MORRIS, LEMASTERS, LEE, DPD, the Bailey family, the
2 Vasquez family, and the Tanksworth family to have fake DPD officers respond to PLAINTIFF's 911
3 call of attempted murder

4      -    they conspired with MORRIS, LEMASTERS, LEE, DPD, the Bailey family, the
5 Vasquez family, and others to follow, stalk, assault PLAINTIFF, and attempt to frame him for a crime
6 in Dallas, California and other states after his May 13, 2024 911 call and previous police reports

7 57.    From March 2023 through the present, GARCIA and BARCLAY fraudulently concealed to
8 PLAINTIFF that they were conspiring with JEFF WOODSON, KATHERINE WOODSON, MORRIS,
9 and others to intentionally refuse to investigate PLAINTIFF's multiple reports of attempted murder and
10 crime framing.

11 58.    Despite PLAINTIFF providing the name, address, photograph of the attempted shooter,
12 identities of individuals who impersonated DPD officers and detailed other information, DPD,
13 GARCIA, and BARCLAY intentionally failed to make a single phone call, email, text, in-person visit,
14 or take any other action to investigate PLAINTIFF's police reports. Their actions were outside the
15 scope of their employment with DPD and/or CITY OF DALLAS so this cause of action is not subject
16 to any tort claim act.

17 59.    From January 1, 2023 through the present in Dallas, Texas, employees of AMAZON who had
18 authority to act and speak on its behalf fraudulently concealed to PLAINTIFF multiple times that it and
19 its employees were conspiring with  JEFF WOODSON, KATHERINE WOODSON, MORRIS, and
20 others to intentionally attempt to frame him for a crime.

21 60.    On January 7, 2023 in Dallas, Texas, employees at WHATABURGER who had authority to act
22 and speak on its behalf fraudulently concealed to PLAINTIFF that it and its employees were
23 conspiring with JEFF WOODSON, KATHERINE WOODSON, MORRIS, and others to intentionally
24 attempt to kill him, assault him, or frame him for a crime.

25 61.    On May 13, 2024 in Dallas, Texas, employees at MARRIOTT who had authority to act and
26 speak on its behalf fraudulently concealed to PLAINTIFF that it and its employees at Fairfield Inn
27 were conspiring with JEFF WOODSON, KATHERINE WOODSON, MORRIS, and others to
28 intentionally attempt to kill him, assault him, or frame him for a crime.

-12-

1    62.    MARRIOTT fraudulently misrepresented and concealed to PLAINTIFF that the Fairfield Inn

2   was placing PLAINTIFF on May 13. 2024 in a hotel room adjacent to members of the MORRIS

3   family who had followed and stalked him there after his 911 call for attempted murder in order for the

4   MORRIS family to cause PLAINTIFF substantial harm. MARRIOTT also fraudulently misrepresented

5   and concealed to PLAINTIFF that the Fairfield Inn had members of the MORRIS family fraudulently

6   impersonating employees to cause PLAINTIFF substantial harm.

7    63.    JEFF WOODSON, KATHERINE WOODSON, MORRIS, GARCIA, BARCLAY, AMAZON,

8   WHATABURGER, and MARRIOTT made all of these false statements and fraudulent concealments

9   to PLAINTIFF, knew that the fraudulent statements representations him were false when they were

10   made, they intended that PLAINTIFF rely on the fraudulent representations and fraudulent

11   concealments, PLAINTIFF reasonably and justifiably relied on the fraudulent representations,

12   PLAINTIFF suffered substantial harm, and PLAINTIFF's reliance on the fraudulent representations

13   was a substantial factor in causing him substantial harm.

14                  **THIRD CAUSE OF ACTION – NEGLIGENCE**

15       (Against Defendants JEFF WOODSON, KATHERINE WOODSON, MORRIS, LEMASTERS,

16         WILLIAM LEMASTERS, LEE, AMAZON, WHATABURGER, MARRIOTT, and SNL)

17

18    64.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every

19   previously alleged paragraph in this Complaint as though fully set forth at length again.

20    65.    JEFF WOODSON, KATHERINE WOODSON, MORRIS, LEMASTERS, WILLIAM

21   LEMASTERS, LEE, AMAZON, WHATABURGER, MARRIOTT, and SNL (collectively "Negligent

22   Defendants") owed PLAINTIFF a legal duty to exercise reasonable care in connection with their

23   dealings with PLAINTIFF. The Negligent Defendants breached their legal duty to PLAINTIFF by

24   negligently acting and conspiring to do the following:

25        -      Frame PLAINTIFF for a crime or kill him to cover up their association with Laufer,

26   Hixson, and other drug dealers.

27        -      Negligently acting and conspiring with their relative California landlords Laufer and

28   Hixson to frame him for a crime in retaliation for his police reports against them.

1    -    Arranging for the private investigator of PLAINTIFF'S former law firm, LEE, to enter

2    into a relationship with KATHERINE WOODSON's next door neighbor LEMASTERS to frame or kill

3    PLAINTIFF

4    -    Placing numerous hidden cameras and audio devices in KATHERINE WOODSON's

5    townhouse, in PLAINTIFF'S car, and hacking his cell phone and computer in order to frame him for a

6    crime or kill him

7    -    Illegally monitor the hidden cameras, track PLAINTIFF's movements, and direct

8    neighbors and others to follow and stalk him in order to frame him for a crime

9    -    Conspiring with members of the MORRIS and Murray families and Jason Martin

10   Caswell to have PLAINTIFF assaulted or killed at Backyard Barbeque on January 5, 2023, near

11   Churchill Park on January 6, 2023, and at WHATABURGER on January 7, 2023

12   -    Being involved in or be members of the Martin-Story Gang, a version of the Jesse

13   Woodson James organization, and other drug cartels

14   -    Conspiring with the DPD and City of Dallas to have the DPD refuse to investigate

15   PLAINTIFF's multiple police reports of attempted murder and crime frame attempts

16   -    Lying about the death of a family member and a family friend in order to postpone

17   PLAINTIFF from filing police reports and a lawsuit against them

18   -    Arranging for members of their affiliated criminal gangs to follow and stalk

19   PLAINTIFF when he left Dallas in January 2023 and attempt to frame or kill him in retaliation

20   -    Arranging for members of their affiliated criminal gangs to follow and stalk

21   PLAINTIFF when he left Dallas in April 2023 to Las Vegas, Nevada and California and attempt to

22   frame or kill him in retaliation

23   -    Arranging for members of their affiliated criminal gangs to follow and stalk

24   PLAINTIFF when he left Dallas in March 2024 to Las California and attempt to frame or kill him in

25   retaliation

26   -    Conspiring to have fake DPD officers go to KATHERINE WOODSON's townhouse on

27   May 1, 2024 for an alleged welfare check on PLAINTIFF

28

-14-

1           -         Attempting to murder PLAINTIFF at KATHERINE WOODSON's townhouse on May
2    13, 2024

3           -         Conspiring with the DPD, the Bailey family, the Vasquez family, and the Tanksworth
4    family to have fake DPD officers respond to PLAINTIFF's 911 call of attempted murder

5           -         Conspiring with the DPD, the Bailey family, the Vasquez family, and others to follow,
6    stalk, assault PLAINTIFF, and attempt to frame him for a crime in Dallas, California and other states
7    after his May 13, 2024 911 call and previous police reports

8    66.      As the owner of the LEMASTERS' townhouse, WILLIAM LEMASTERS had a legal duty to
9    properly screen who was living there, properly supervise their activities, provide adequate security, and
10   ensure that his tenants were not engaged in criminal conduct to frame, injure, or kill PLAINTIFF.

11   67.      AMAZON negligently concealed to PLAINTIFF multiple times that it and its employees were
12   conspiring with  JEFF WOODSON, KATHERINE WOODSON, MORRIS, and others to intentionally
13   attempt to frame him for a crime. AMAZON breached its duty to PLAINTIFF to exercise reasonable
14   care and refrain from acting negligently by failing to properly hire, train, and supervise its employees.

15   68.      On January 7, 2023 in Dallas, Texas, WHATABURGER negligently concealed to PLAINTIFF
16   that it and its employees were conspiring with JEFF WOODSON, KATHERINE WOODSON,
17   MORRIS, and others to intentionally attempt to kill him, assault him, or frame him for a crime.
18   WHATABURGER breached its duty to PLAINTIFF to exercise reasonable care and refrain from
19   acting negligently by failing to properly hire, train, and supervise its employees.

20   69.      MARRIOTT breached its duty to PLAINTIFF to exercise reasonable care and refrain from
21   acting negligently by failing to provide him with a habitable hotel room; properly screen hotel guests;
22   not interfere with PLAINTIFF'S use and peaceful enjoyment of the hotel room; refrain from
23   intentionally placing PLAINTIFF in a hotel room adjacent to members of the MORRIS family who
24   had followed and stalked him there after his 911 call for attempted murder in order for the MORRIS
25   family to cause PLAINTIFF substantial harm; refrain from permitting members of the MORRIS
26   family to fraudulently impersonate employees; refrain from placing other members of the MORRIS
27   family in the hotel to cause PLAINTIFF substantial harm; properly hire and supervise its employees;
28   and, failing to provide adequate security.

-15-

1  70.    SNL breached its duty to PLAINTIFF to exercise reasonable care and refrain from acting

2  negligently by failing to properly screen the purchasers of its townhomes, supervise the activities of the

3  townhouse owners and others on the property, provide adequate security, and construct the townhouses

4  to provide security to owners and guests.

5  71.    Negligent Defendants' breaches as alleged above were a substantial factor as well as a direct

6  and legal cause of the damages and harm suffered by PLAINTIFF.

7  72.    PLAINTIFF's damages include, but are not limited to, general and compensatory damages,

8  punitive damages, damages to PLAINTIFF's body and physical health, attorneys' fees, fees and costs,

9  and severe emotional distress that includes PLAINTIFF's mental suffering, mental anguish, fright,

10  horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame that an ordinary, reasonable

11  person would be unable to cope with it. PLAINTIFF's damages for MARRIOTT'S negligence

12  substantially exceeds his economic damages for MARRIOTT'S breaches of contract.

13  **FOURTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION**

14  (Against Defendants JEFF WOODSON, KATHERINE WOODSON, MORRIS, LEMASTERS,

15  WILLIAM LEMASTERS, LEE, AND MARRIOTT)

16

17  73.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every

18  previously alleged paragraph in this Complaint as though fully set forth at length again.

19  74.    JEFF WOODSON, KATHERINE WOODSON, MORRIS, LEMASTERS, WILLIAM

20  LEMASTERS, LEE, AND MARRIOTT (collectively "Negligent Defendants") owed PLAINTIFF a

21  legal duty to exercise reasonable care in connection with their dealings with PLAINTIFF.

22  75.    The Negligent Defendants negligently misrepresented or negligently concealed to PLAINTIFF

23  all of the preceding material information in the Negligence cause of action.

24  76.    As the owner of the LEMASTERS' townhouse, WILLIAM LEMASTERS had a legal duty to

25  properly screen who was living there, properly supervise their activities, provide adequate security, and

26  ensure that his tenants were not engaged in criminal conduct to frame, injure, or kill PLAINTIFF.

27  77.    MARRIOTT negligently represented or negligently concealed to PLAINTIFF that it was

28  failing to provide him with a habitable hotel room; properly screen hotel guests; not interfere with

-16-

1    PLAINTIFF'S use and peaceful enjoyment of the hotel room; refrain from intentionally placing

2    PLAINTIFF in a hotel room adjacent to members of the MORRIS family who had followed and

3    stalked him there after his 911 call for attempted murder in order for the MORRIS family to cause

4    PLAINTIFF substantial harm; refrain from permitting members of the MORRIS family to fraudulently

5    impersonate employees; refrain from placing other members of the MORRIS family in the hotel to

6    cause PLAINTIFF substantial harm; properly hire and supervise its employees; and, failing to provide

7    adequate security.

8    78.    Defendants made all of these negligent statements and negligent concealments to PLAINTIFF,

9    knew that the fraudulent misrepresentations were false when they were made, they intended that

10   PLAINTIFF rely on the negligent representations and negligent concealments, PLAINTIFF reasonably

11   and justifiably relied on the negligent misrepresentations, PLAINTIFF suffered substantial harm

12   caused by their negligent misrepresentations, and PLAINTIFF's reliance on the negligent

13   misrepresentations was a substantial factor in causing him substantial harm and damages.

14   79.    PLAINTIFF's damages include, but are not limited to, general and compensatory damages,

15   punitive damages, damages to PLAINTIFF's body and physical health, attorneys' fees, fees and costs,

16   and severe emotional distress that includes PLAINTIFF's mental suffering, mental anguish, fright,

17   horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame that an ordinary, reasonable

18   person would be unable to cope with it. PLAINTIFF's damages for MARRIOTT'S negligence

19   substantially exceeds his economic damages for MARRIOTT'S breaches of contract.

20                          **FIFTH CAUSE OF ACTION – ASSAULT**

21   (Against Defendants JEFF WOODSON, KATHERINE WOODSON, MORRIS, LEMASTERS, LEE,

22                                  AND MARRIOTT)

23

24   80.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every

25   previously alleged paragraph in this Complaint as though fully set forth at length again.

26   81.    JEFF WOODSON, KATHERINE WOODSON, MORRIS, LEMASTERS, LEE, AND

27   MARRIOTT (collectively "Assaulting Defendants") assaulted PLAINTIFF by intentionally

28   committing the following acts:

-17-

1      -      Attempting to frame PLAINTIFF for a crime or kill him to cover up their association

2  with Laufer, Hixson, and other drug dealers.

3      -      Negligently acting and conspiring with their relative California landlords Laufer and

4  Hixson to frame him for a crime in retaliation for his police reports against them.

5      -      Arranging for the private investigator of PLAINTIFF'S former law firm, LEE, to enter

6  into a relationship with KATHERINE WOODSON's next door neighbor LEMASTERS to frame or kill

7  PLAINTIFF

8      -      Placing numerous hidden cameras and audio devices in KATHERINE WOODSON's

9  townhouse, in PLAINTIFF'S car, and hacking his cell phone and computer in order to frame him for a

10  crime or kill him

11      -      Illegally monitor the hidden cameras, track PLAINTIFF's movements, and direct

12  neighbors and others to follow and stalk him in order to frame him for a crime

13      -      Conspiring with members of the MORRIS and Murray families and Jason Martin

14  Caswell to have PLAINTIFF assaulted or killed at Backyard Barbeque on January 5, 2023, near

15  Churchill Park on January 6, 2023, and at WHATABURGER on January 7, 2023

16      -      Be involved in or be members of the Martin-Story Gang, a version of the Jesse

17  Woodson James organization, and other drug cartels

18      -      Conspiring with the DPD and City of Dallas to have the DPD refuse to investigate

19  PLAINTIFF's multiple police reports of attempted murder and crime frame attempts

20      -      Lying about the death of a family member and family friend in order to postpone

21  PLAINTIFF from filing police reports and a lawsuit against them

22      -      Arranging for members of their affiliated criminal gangs to follow and stalk

23  PLAINTIFF when he left Dallas in January 2023 and attempt to frame or kill him in retaliation

24      -      Arranging for members of their affiliated criminal gangs to follow and stalk

25  PLAINTIFF when he left Dallas in April 2023 to Las Vegas, Nevada and California and attempt to

26  frame or kill him in retaliation

27

28

-18-

1         -      Arranging for members of their affiliated criminal gangs to follow and stalk

2  PLAINTIFF when he left Dallas in March 2024 to Las California and attempt to frame or kill him in

3  retaliation

4         -      Conspiring to have fake DPD officers go to KATHERINE WOODSON's townhouse on

5  May 1, 2024 for an alleged welfare check on PLAINTIFF

6         -      Attempting to murder PLAINTIFF at KATHERINE WOODSON's townhouse on May

7  13, 2024

8         -      Conspiring with the DPD, the Bailey family, the Vasquez family, and the Tanksworth

9  family to have fake DPD officers respond to PLAINTIFF's 911 call of attempted murder

10       -      Conspiring with the DPD, the Bailey family, the Vasquez family, and others to follow,

11  stalk, assault PLAINTIFF, and attempt to frame him for a crime in Dallas, California and other states

12  after his May 13, 2024 911 call and previous police reports

13  82.    Defendants' intentional acts caused PLAINTIFF to reasonably apprehend imminent, harmful or

14  offensive contacts by Defendants and their co-conspirators. Defendants had the apparent ability to

15  carry out the numerous, continuous threats of harm and PLAINTIFF clearly did not consent to

16  Defendants' intentional acts.

17  83.    PLAINTIFF's damages for numerous assaults include, but are not limited to, general and

18  compensatory damages, punitive damages, damages to PLAINTIFF's body and physical health,

19  attorneys' fees, fees and costs, and severe emotional distress.

20

21                     **SIXTH CAUSE OF ACTION – STALKING**

22      (Against Defendants JEFF WOODSON, KATHERINE WOODSON, MORRIS, LEMASTERS, and

23                            LEE)

24  84.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every

25  previously alleged paragraph in the Complaint as though fully set forth at length again.

26  85.    On numerous occasions, Defendants engaged in harassing behavior toward PLAINTIFF that

27  was reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass him. As a result, he

28  reasonably feared for his safety. Further, Defendants while engaged in the harassing behavior toward

-19-

1  PLAINTIFF by acts or words threatened to inflict bodily injury on him or to commit an offense against

2  PLAINTIFF or to his property.

3  86.    Defendants had the apparent ability to carry out the threat, Defendants' apparent ability to carry

4  out the threat caused PLAINTIFF to reasonably fear for his safety. PLAINTIFF demanded multiple

5  times clearly demanded that Defendants' stop their harassing behavior. However, after the demands by

6  PLAINTIFF, Defendants' continued the harassing behavior. PLAINTIFF reported Defendants'

7  harassing behavior to the DPD, but DPD refused to take any action against Defendants yet again.

8  87.    Stalking Defendants conspired with neighbors and others to stalk PLAINTIFF and formed,

9  operated, and took action to further the conspiracy by monitoring the illegal hidden cameras in

10  KATHERINE WOODSON's townhouse and directing others to follow, stalk, and cause harm to

11  PLAINTIFF. Therefore, Stalking Defendants are liable for the acts of the co-conspirators who

12  followed, stalked, assaulted, and caused harm to PLAINTIFF.

13  88.    PLAINTIFF's damages for Defendants' illegal stalking include, but are not limited to, general

14  and compensatory damages, punitive damages, damages to PLAINTIFF's body and physical health,

15  attorneys' fees, fees and costs, and severe emotional distress.

16  **SEVENTH CAUSE OF ACTION – FALSE IMPRISONMENT**

17  (Against Defendants JEFF WOODSON, KATHERINE WOODSON, MORRIS, LEMASTERS, and

18  LEE)

19  89.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every

20  previously alleged paragraph in the Complaint as though fully set forth at length again.

21  90.    Due to Defendants continuously and illegally monitoring PLAINTIFF's movements on hidden

22  cameras and either following, stalking, assaulting, and attempting to frame PLAINTIFF for a crime, or

23  directing others to follow, stalk, assault, and try to frame him for a crime, Defendants intentionally

24  restricted PLAINTIFF's freedom of movement by making him apprehensive and forcing him to not

25  leave his residence and confine him in the residence in order to avoid their following, stalking,

26  assaulting, and attempting to frame him for a crime.

27  91.    PLAINTIFF did not consent to being confined in his residence that was caused by Defendants'

28  intentional conduct. Defendants' action were without lawful authority and PLAINTIFF was certainly

-20-

1  aware of the intentionally caused confinement in his residence because he wanted to leave the
2  residence and live a normal life.

3  92.    PLAINTIFF suffered harm and damages caused by Defendants' false imprisonment including,
4  but not limited to, general and compensatory damages, punitive damages, damages to PLAINTIFF's
5  body and physical health, attorneys' fees, fees and costs, and severe emotional distress and mental
6  anguish.

7            **EIGHTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL**
8                                        **DISTRESS**

9  (Against Defendants JEFF WOODSON, KATHERINE WOODSON, MORRIS, LEMASTERS, LEE,
10                                  and MARRIOTT)

11  93.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every
12  previously alleged paragraph in the Complaint as though fully set forth at length again.

13  94.    DEFENDANTS' intentional conduct was outrageous; DEFENDANTS intended to cause
14  PLAINTIFF emotional distress or DEFENDANTS acted with reckless disregard of the probability that
15  PLAINTIFF would suffer emotional distress; DEFENDANTS knew that PLAINTIFF was present
16  when the conduct occurred; PLAINTIFF suffered severe emotional distress; and DEFENDANTS'
17  conduct was a substantial factor in causing PLAINTIFF's severe emotional distress.

18  95.    PLAINTIFF's severe emotional distress includes, but is not limited to, PLAINTIFF's mental
19  suffering, mental anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and
20  shame that an ordinary, reasonable person would be unable to cope with it. PLAINTIFF's damages for
21  Defendants' intentional infliction of emotional distress substantially exceeds his economic damages for
22  Defendants' MARRIOTT's breaches of contract.

23            **NINTH CAUSE OF ACTION – VIOLATION OF 42 U.S.C. sec. 1983**
24                    (Against Defendants DPD and CITY OF DALLAS)

25  96.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every
26  previously alleged paragraph in the Complaint as though fully set forth at length again.

27  97.    DPD and CITY OF DALLAS, at all times relevant herein subjected PLAINTIFF to conduct
28  that occurred under color of state law, including but not limited to, under color of the statute,

-21-

1 | ordinance, regulation, custom, or usage, of Texas.

2 | 98.     DPD and CITY OF DALLAS subjected, or caused to be subjected, PLAINTIFF to the

3 | deprivation of his rights, privileges, or immunities secured by the Fourth Amendment to the

4 | Constitution of the United States of America by conducting an illegal search and seizure of

5 | PLAINTIFF, his real property residence, and his personal property without a warrant or probable cause

6 | and used excessive force during the illegal detainment of PLAINTIFF.

7 | 99.     DPD and CITY OF DALLAS also subjected, or caused to be subjected, PLAINTIFF to the

8 | deprivation of his rights, privileges, or immunities secured by the Fourteenth Amendment to the

9 | Constitution of the United States of America and violated his procedural due process rights by

10 | intentionally refusing to take any action against Defendants regarding PLAINTIFF's multiple DPD

11 | reports on Defendants' attempts to murder him in January 2023 and May 13, 2024 and their numerous

12 | attempts to illegally frame him for crimes he did not commit.

13 | 100.    DPD and CITY OF DALLAS not only failed to make a single phone call or visit to Defendants

14 | to question them on the attempted murders and crime framing, but DPD and CITY OF DALLAS

15 | participated in the criminal activity against PLAINTIFF by attempting to frame him for crimes,

16 | refusing to arrest KATHERINE WOODSON, MORRIS, LEMASTERS, and LEE for attempted

17 | murder, and therefore permitting the MORRIS family to illegally follow and stalk PLAINTIFF to the

18 | Fairfield Inn to finish the job.

19 | 101.    CITY OF DALLAS, DPD and its officers unlawfully conspired with JEFF WOODSON,

20 | KATHERINE WOODSON, MORRIS, LEMASTERS, and LEE to retaliate against PLAINTIFF for

21 | his police reports by wrongfully detaining him and committing assault, battery, excessive use of force,

22 | and false imprisonment against PLAINTIFF and violating his constitutional rights.

23 | 102.    The actions of DPD and CITY OF DALLAS were the direct and proximate cause of the

24 | deprivation of PLAINTIFF'S constitutional rights under the Fourth and Fourteenth Amendments to the

25 | U.S. Constitution, and the substantial harm and damages he suffered.

26

27

28

-22-

1

## TENTH CAUSE OF ACTION – BREACH OF CONTRACT

2

### (Against Defendant MARRIOTT)

3    103.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every

4    previously alleged paragraph in the Complaint as though fully set forth at length again.

5    104.    PLAINTIFF entered into a written contract with MARRIOTT on May 13, 2024 and he fully

6    performed his obligations under the contract by paying the fee for a one night stay and the deposit.

7    105.    MARRIOTT'S obligations under the written contract included, but were not limited to,

8    providing PLAINTIFF with a habitable hotel room; properly screen hotel guests; not interfere with

9    PLAINTIFF'S use and peaceful enjoyment of the hotel room; refrain from intentionally placing

10    PLAINTIFF on May 13. 2024 in a hotel room adjacent to members of the MORRIS family who had

11    followed and stalked him there after his 911 call for attempted murder in order for the MORRIS family

12    to cause PLAINTIFF substantial harm; refrain from permitting members of the MORRIS family to

13    fraudulently impersonate employees; refrain from placing other members of the MORRIS family in the

14    hotel to cause PLAINTIFF substantial harm; properly hire and supervise its employees; provide

15    adequate security; refrain from attempting to frame PLAINTIFF for a crime; and refrain from

16    intentionally inflicting severe emotional distress on PLAINTIFF.

17    106.    MARRIOTT breached the written contracts by failing to meet any of their obligations as

18    alleged herein under the contracts.

19    107.    MARRIOTT'S material breaches caused PLAINTIFF substantial damages.

20

21    ## ELEVENTH CAUSE OF ACTION – BREACH OF THE IMLPLIED COVENANT OF GOOD

22    ## FAITH AND FAIR DEALING

23    ### (Against Defendant MARRIOTT)

24    108.    PLAINTIFF repleads, realleges, and hereby incorporates by reference each and every

25    previously alleged paragraph in this Complaint as though fully set forth at length again.

26    109.    A breach of contract may be established on the basis of either an express provision of the

27    contract or on the implied covenant of good faith and fair dealing.

28    110.    Every contract imposes upon each party a duty of good faith and fair dealing in the

-23-

1   performance of the contract such that neither party shall do anything which will have the effect of

2   destroying or injuring the right of either party to receive the benefits of the contract. Under

3   PLAINTIFF'S contract with MARRIOTT, it was under a duty to perform in good faith and fair dealing

4   so PLAINTIFF was not deprived of the benefits of the written contract.

5   111.    However, MARRIOTT breached its duty of good faith and fair dealing under the written

6   contract with PLAINTIFF by failing to provide him with a habitable hotel room; properly screen hotel

7   guests; not interfere with PLAINTIFF'S use and peaceful enjoyment of the hotel room; refrain from

8   intentionally placing PLAINTIFF in a hotel room adjacent to members of the MORRIS family who

9   had followed and stalked him there after his 911 call for attempted murder in order for the MORRIS

10  family to cause PLAINTIFF substantial harm; refrain from permitting members of the MORRIS

11  family to fraudulently impersonate employees; refrain from placing other members of the MORRIS

12  family in the hotel to cause PLAINTIFF substantial harm; properly hire and supervise its employees;

13  and, failing to provide adequate security.

14  112.    PLAINTIFF has fully performed all conditions, covenants and all else required of him under

15  the contracts and complied with his duty to act in good faith and fair dealing.

16  113.    PLAINTIFF has been damaged and harmed by MARRIOTT'S breaches of the implied

17  covenant of good faith and fair dealing and the breaches as alleged above were a substantial factor as

18  well as a direct and legal cause of the damages and harm suffered by PLAINTIFF.

19

20  **PRAYER**

**WHEREFORE**, PLAINTIFF prays for Judgment against DEFENDANTS as follows:

21
22          1.      That Judgment be entered in PLAINTIFF'S favor;

23          2.      For general and special damages, punitive damages, and exemplary damages;

24          3.      For attorneys' fees and costs of suit.

25          4.      For all other relief the court deems proper.

26

27  DATED: October 7, 2024


Ryan Woodson
Plaintiff in pro per.

28

-24-

_____

1

2

3

4

5

6

7

8

9        3.      For attorneys' fees and costs of suit.

10       4.      For all other relief the court deems proper.

11

12   DATED: October 19, 2024

        Ryan Woodson
13                                              *Plaintiff in pro per*
                                                10749 Sandpiper Ln.
14                                              Dallas, Texas 75230
                                                Tel.: 214-502-1121
15                                              Email: rwcalif@gmail.com

16

17

18

19

20

21

22

                                       -25-